## 31575. JOHNSON v. THE STATE.

HALL, Justice.

Johnson was convicted by a jury on two counts of armed robbery and sentenced to thirteen years on each count. He appeals. A previous trial on these charges resulted in a mistrial because of the failure of that jury to reach a verdict.

All the enumerations of error relate to alleged improper statements of the prosecuting attorney. Reversible error in one of these statements decides this appeal.

In his closing argument the prosecutor referred to bank tellers who were on duty in the bank at the time of the armed robbery, saying, "There were two girls, one of whom was so shaken on the stand, that was Alberta Tucker, she was nervous, she was a nervous wreck, and she was nervous out in the hall. And defense counsel asked where is Dianne Simmons, why didn't we call her, well I might tell you that if the defense attorney called her

she would contradict the testimony of the other tellers. Why didn't they call her? They had the same subpoena powers that we did, they could have subpoenaed her, she was out in the hall but they didn't call her in. I'll tell you why the State didn't call her, she was too terrified to come in and testify against the defendant. I state in my place that she told me that she had fears for her life, that her life would be taken if she came into Court and identified the defendant."

Defense counsel objected and asked that anything Mrs. Simmons said to the prosecutor be stricken. The trial judge said "I believe that goes outside the evidence . . . That goes a little far afield." However, he gave no instructions to the jury. The next day defense counsel moved for a mistrial, but the motion was overruled. The state contends here that the motion for mistrial was not timely; however, we do not reach that question because of the trial court's error in failing to strike the prejudicial statement, instruct the jury to disregard it and rebuke the prosecutor.

"Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same; and, on objection made, he shall also rebuke the counsel, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the plaintiff's attorney is the offender." Code Ann. § 81-1009.

In our opinion, the remarks of the prosecutor concerning what Mrs. Simmons told him were highly improper and prejudicial and the trial court erred in not striking this from the record and instructing the jury to disregard it. *Mitchum v. State*, 11 Ga. 615 (1852).

The state contends that even if the trial court were in error, the error was harmless under the facts of this case. In discussing harmless error, a distinction is made between the test for determining harmless constitutional error and harmless nonconstitutional error. The former is set forth in the decisions of the Supreme Court of the United States. See Schneble v. Florida, 405 U. S. 427 (1972). The latter is a question for each state.

The doctrine of harmless error in civil cases is set forth in Code Ann. § 81A-161. It is the same language found in Rule 61 of the Federal Rules of Civil Procedure. Under both rules the case should not be reversed unless the refusal would be "inconsistent with substantial justice." In *Hall v. State,* 202 Ga. 619, 620 (44 SE2d 234) (1920), this court applied similar language in a criminal case, i.e., harmful error resulting "in a miscarriage of justice."

A review of past decisions demonstrates a lack of explicit standards for weighing nonconstitutional errors in criminal cases. If the error is relevant to the issues in dispute, not cumulative of other evidence, not beneficial to the defendant and uncorrected by the trial court, then there is perhaps no reason for saying it is harmless, but it may nevertheless be harmless in the context of the entire case. This is the point where a standard for weighing the error is important.

The standard we adopt is what is known as the "highly probable test," i.e., that it is "highly probable that the error did not contribute to the judgment." Traynor, What Makes Error Harmless, The Riddle of Harmless Error (1970). "The *highly probable* test avoids the evils of inadequate or excessive stringency by making affirmance conditional on high probability that error did not affect the judgment. The test compels a judge to go beyond a first glance for affirmance or a fleeting glimpse for reversal. It compels him to exercise his mind in the exercise of his discretion, to go beyond the appearances of the result to an examination of what causal links there may be between error and the judgment. It keeps judicial discretion within the ample bounds of reason. It can greatly improve the net worth of the judicial process as it thus holds down excesses either of affirmance that recklessly dampens assurance of a fair day in court or of reversal that needlessly calls for still another fair day at the expense of litigants who are still awaiting their first day in court." Id. at pp. 50-51.

After reviewing the evidence, noting that in the first trial on these charges a mistrial resulted from the failure of the jury to reach a verdict, and considering the gravity and prejudicial character of the error, we cannot say that it is highly probable that the error did not contribute to

the jury's verdict.

Having reversed the judgment under the nonconstitutional harmful error test we do not reach the question of whether the error here is of constitutional magnitude.

*Judgment reversed. All the Justices concur.*

ARGUED OCTOBER 13, 1976 — DECIDED DECEMBER 1, 1976.

*Swift, Currie, McGhee & Hiers, Joseph J. Burton, Jr., Steven A. Brickman,* for appellant.

*Lewis R. Slaton, District Attorney, R. David Petersen, H. Allen Moye, Assistant District Attorneys, Arthur K. Bolton, Attorney General, Daryl A. Robinson,* for appellee.